In re A.A.D.C., INC., Debtor.

**Bankruptcy No. 93–61277.**

United States Bankruptcy Court, N.D. Ohio.

Jan. 9, 1996.

Josiah L. Mason, Ashland, OH.

Wallace W. Walker, Jr., Roetzel and Andress, Akron, OH.

John A. Naayers, Maumee, OH.

## MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Chief Judge.

The court, on September 29, 1994, conducted a hearing on the First Interim Application of Roetzel & Andress (R & A), Attorneys for the Trustee, for Compensation and Reimbursement of Expenses (First Application). The trustee is Josiah L. Mason, duly appointed and acting as the debtor corporation's trustee under Chapter 7 of Title 11 of the United States Code. The case, while nominally a liquidation proceeding, has been the source of substantial litigation and has presented the trustee with formidable obstacles in his efforts to collect and dispose of the estate's assets.

As evidence of the extent of the trustee's activities, his attorneys, in their First Application, sought $102,114.75 in compensation plus $3,990.33 in reimbursement of expenses and detailed the activities of R & A personnel in a total of 734.35 hours on the case. The only objections raised were by two officers, directors and shareholders of the debtor who, through counsel, cited what they considered to be overstaffing of the case by R & A, frequent meetings among several R & A lawyers with resultant charges to the estate by each and numerous tasks performed by R & A which were non-legal in nature and properly within the scope of the trustee's duties.

The court allowed full reimbursement of R & A's expenses, but withheld approval of 40% of the requested compensation, or $40,845.90. R & A filed its second interim application for compensation and reimbursement of expenses in which it sought payment for services rendered during the period covered thereby and the portion withheld from the first interim award. Again, the same objectors appeared through counsel, and repeated their concerns. The court allowed the full sum in compensation and reimbursement of expenses sought in the second interim application and advised counsel that it would issue this memorandum of decision and order with respect to the withheld portion of the First Application.

■ One area of concern raised by the objectors has to do with the presence in court, and charges for the time of each, of two lawyers from R & A on behalf of the trustee in his efforts to recover two pieces of equipment to which these same objectors laid claim. The trial was conducted over three separate days and involved numerous witnesses and documents. The trustee prevailed, in no small part because of the effective presentation of his case by his lawyers whose task it was to organize and bring forth the evidence in a coherent, understandable fashion. While one of these lawyers, Mr. Walker, handled substantially all of the questioning of witnesses and through them, the

introduction of the documentary evidence, the other attorney, Mr. Schrader, had the important task of organizing the material for presentation by Mr. Walker through direct examination, and retrieving whatever documents were required for cross-examination. The court finds no basis for disallowing any portion of the compensation requested for these activities.

■ Of significant concern to the court are the activities of R & A in areas which would appear to be the proper realm of the trustee in the case, Mr. Mason. Mr. Mason is one of this District's most senior trustees, having performed as such for more than twenty years. Mr. Mason has, to date, himself applied for and been awarded interim compensation in the amount of $18,145.73 and reimbursement of his expenses of $48.25. Presumably, more will be sought when the case is brought to a close.

A crucial activity in the fall of 1993, the year the case was filed, was the preservation and protection of the very large plant which housed the debtor's operations. Gas line leaks had to be located and repaired so that heat could be kept on to avoid catastrophic loss to the building and its contents. It was, R & A's First Application reveals, Mr. Walker who expended considerable time in getting the gas to the plant turned on, normally, one would think, a role to be performed by the trustee. The court's review of Mr. Walker's time in this activity reveals 5.55 hours in various chores related to the gas service which, at his hourly charge of $190.00, cost the estate $1,054.50.

In addition to Mr. Walker, other R & A legal personnel, whose billing rates range from $100.00 to $115.00 per hour, gave attention to such matters as arranging for insurance coverage, security and repairs to the building, planning and preparing for the sale at auction of the plant's contents and dealing with the loss of electrical service. These activities might well have been so overwhelming in number as to be beyond Mr. Mason's ability to confront by himself, but if help was needed, surely it was available for less than the $139.05 an hour average hourly charge asserted by R & A in the First Application for its personnel's services. Regard-

less, such work does not command the kind of talent which is entitled to the fees requested. The court has identified 55 hours of time billed by R & A in activities it believes were the responsibility of the trustee.

Lastly, the court turns to those objections relating to conferences among two or more R & A attorneys for which each participant rendered charges at his or her hourly rate. For instance, on October 11, 1993, Messrs. Walker and Schrader conferred for one and one half hours and each submitted charges for the meeting; on October 20, 1993, attorneys Walker, Wesp and Schrader conferred with each other, Mr. Mason and a prospective witness for approximately seven hours for which they billed at their respective rates of $190.00, $135.00 and $115.00 per hour; on November 11, 1993, Messrs. Wesp, Walker and Schrader met and conferred, for which Mr. Wesp billed 0.6 hour and Messrs. Walker and Schrader each charged 0.75 hour to the estate; and Mr. Walker met with Mr. Schrader and Ms. Vazmina, another associate, on January 13, 1994, with each charging 0.8 hour for the conference. There are other examples of multiple billing in the first application, but these will serve to illustrate the court's concern.

It is recognized that no single lawyer possesses all of the time and skills requisite for disposing of the complex issues presented by a large, modern bankruptcy case which will implicate areas of speciality beyond bankruptcy as, indeed, occurred here. From time to time, colleagues with particular expertise or the time to assist with lengthy projects will have to be called upon and this is one of the advantages a law firm possesses and presumably utilizes to present itself as worthy of hire in a case. Concerns arise, the ire of those whose potential recovery is diluted is fanned and the curiosity of the reviewing judge is, or should be, piqued when these several participants in the representative process gather together to plan, prepare and, hopefully, execute their strategy and all render full charges for the effort. Simple mathematics demonstrates that the hourly charge for such work escalates to as much as $440.00 in some of the instances examined in R & A's First Application, an outrageous fee

by present local standards, to be met with disapproval if asserted as the cost of employing R & A or any other law firm with which the court is familiar.

The court is not equipped to examine each charge and compare it against the others in the 57 pages of supporting data submitted with R & A's First Application. Indeed, after having reviewed examples of multiple billing for the same task, should the court disallow all of the charges of some of those billings, or some portion of the total charges for a particular task? By what measure should the court decide that attorney A's charge is allowable in whole or in part but attorney B's is not? It must find other means to express its disapproval of this and the other billing practices of R & A cited above which it finds inappropriate.

The court elects to disallow 10% of R & A's request of $102,114.75 for compensation for services rendered during the period covered by the First Application. Therefore, of the sum previously withheld, $30,634.43 may now be paid by the trustee to his attorneys from the assets of the estate.